DAVID D. GANO *et al.*, Appellant, v. THE MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellee.

**Constitutional Law:** CONDEMNATION ·BY RAILROAD: *Payment of attorney's fees.*  Code, section 2007, providing that railroad corporations condemning land for a right of way shall pay to the land owner reasonable attorney's fees incident to tne assessment of damages or appeal therefrom, is not in derogation of a common or natural right, but a condition imposed on the exercise of a special grant of power, and hence is not unconstitutional as denying railway companies the equal protection of the law.

SAME.  Code, section 2007, requiring railroad companies exercising the power of eminent domain to pay the land owner reasonable attorney's fees incident to the condemnation proceedings or appeal therefrom, is not unconstitutional as class legislation, because not imposing the same duty on all corporations exercising the same power, since the burden imposed applies equally to all of a certain class exercising the power granted.

*Estoppel.*  Where a railroad company takes land under the power granted in Code, section 1995, *et seq.*, governing the condemnation of private land 'for right of way for railroad companies it is thereby precluded from questioning the constitutionality of section 2007, imposing the payment of costs and attorney's fees as a condition to the exercise of the power.

*Appeal from Clay District Court.*—HON. F. H. HELSELL, Judge.

THURSDAY, OCTOBER 17, 1901.

THIS is a controversy over the right to tax attorney's fees in favor of the landowner in a condemnation proceeding.   The trial court refused to tax the fees because of

unconstitutionality of the statute authorizing the same, and the landowners appeal.—*Reversed.*

*R. M. Bush* and *Carr & Parker* for appellant.

*Albert E. Clarke, R. M. Wright* and *Cory & Bemis* for appellees.

We are also favored with a brief on behalf of appellees from Soper, Allen & Alexander, who are interested in a like question in another case.

Deemer, J.—The material parts of section 1995 of the Code are as follows: "Any railway corporation organized in this state or chartered by or organized under the laws of the United States, or any state or territory, may take and hold under the provisions of this chapter so much real estate as may be necessary for the erection and construction and convenient use of its railway, and may also take, remove and use for the construction and repair of said railway and its appurtenances, any earth, gravel, stone, timber or other materials on or from the land so taken. The land so taken, otherwise than by the consent of the owners shall not exceed one hundred feet in width except for wood and water stations, except where greater width is necessary for excavation, embankment or depositing waste earth." The chapter fully provides the manner in which the right of eminent domain may be exercised by such railway corporations. Section 1999 provides for the selection by the sheriff of six freeholders, who shall, upon inspection of the real estate, assess the damages in the event the parties cannot agree on the amount thereof. Other sections provide the method and manner of making the assessment. Section 2009 provides that either party may appeal from the assessment made by the sheriff's jury, and section 2007, which is a part of the chapter in which section 1995 is found, reads as follows: "The corporation shall

pay all the costs of the assessments made by the commissions and those occasioned by the appeal, including reasonable attorney's fees to be taxed by the court, unless on the trial thereof the same or less amount of damages is awarded than was allowed by the commissioners." It is that portion of section 2007 authorizing the assessment of an attorney's fee which it is claimed is unconstitutional. In the instant case the parties were unable to agree, and a sheriff's jury was summoned under the provisions of the statute above referred to. That jury viewed the premises, and assessed plaintiff's damages at $1,400. Thereupon the railway company appealed to the district court, and within a few days thereafter the landowner also appealed. At the hearing in the district court the jury fixed the amount of plaintiff's damages at $1,750, and the court ordered that the railway company should pay plaintiff the amount so fixed, and rendered a judgment against it for costs, but refused to tax an attorney's fee, as provided in section 2007. The appeal is from the refusal of the court to tax attorney's fees.

Our constitution provides that "private property shall not be taken for public use without just compensation first being made, or secured to be made, to the owner thereof as soon as the damages shall be assessed by a jury who shall not take into consideration any advantages that may result to the said owner on account of the improvement for which it is taken." Many reasons are assigned for holding the statute in question unconstitutional. Among other things it is said the statute is not uniform in its operation; that it grants landowners immunities from costs that are imposed on railway companies; that it discriminates in favor of one class of litigants and against another; that it is violative of the fourteenth amendment of the federal constitution, in that it deprives railway companies of their property without due process of law, and denies to such companies the equal protection of the law. Much reliance is placed on *Gulf C. & S. F. R. Co. v. Ellis,*

165 U. S. 150 (17 Sup. Ct. Rep. 255, 41 L. Ed. 666), and
other like cases, to which we will hereafter more particularly
refer. The main contention, as we understand it, is that the
statute is discriminatory in character, denies to railway com-
panies the equal protection of the law, and confers special
privileges that are arbitrary in character and unjustifiable.
To these points we will now address ourselves.

Statutes allowing plaintiffs only to recover attorney's
fees as part of the judgment in particular actions selected by
the legislature .have been sustined in a great number of
cases. See *Kansas Pac. R. Co. v. Mower*, 16 Kan. 573;
*Peoria, D. & E. R. Co. v. Duggan*, 109 Ill. 537 (50 Am.
Rep. 619); *Voegel v. Pekoc*, 157 Ill. Sup. 339 (42 N. E.
Rep. 386); *Dow v. Beidelman*, 49 Ark. 455 (5 S. W. Rep.
718); *Perkins v. Railway Co.*, 103 Mo. Sup. 52 (15 S. W.
Rep. 320); *Burlington, C. R. & N. R. Co. v. Dey*, 82 Iowa,
312; *Wortman v. Kleinschmidt*, 12 Mont. 316 (30 Pac.
Rep. 280); *Gulf C. & S. F. R. Co. v. Ellis,* 87 Tex. Sup.
19 (26 S. W. Rep. 985); *Cameron v. Railroad Co.*, 63 Minn.
384 (65 N. W. Rep. 652); *Atchison, T. & S. F. Ry. Co. v.
Matthews*, 174 U. S. 96 (19 Sup. Ct. Rep. 609, 43 L. Ed.
909). In other cases such statutes have been held invalid.
*Hocking Valley Coal Co. v. Rosser*, 53 Ohio St. 12 (41 N.
E. Rep. 264); *Wilder v. Railroad Co.*, 70 Mich. 382 (38 N.
W. Rep. 289); *St. Louis I. M. & S. R. Co. v. Williams*, 49
Ark. 492 (5 S. W. Rep. 883); *Jolliffe v. Brown*,
14 Wash. 155 (44 Pac. Rep. 149); *Grand Rapids
Chair Co. v. Runnells*, 77 Mich. 104 (43 N. W.
Rep. 1006); *Railroad Co. v. Morris*, 65 Ala. 193;
*Gulf, C. & S. F. Railway Co. v. Ellis, supra; Rail-
road Co. v. Moss*, 60 Miss. 641; *Durkee v. City of Janesville*,
28 Wis. 464 (9 Am. Rep. 500). A careful examination of
these cases indicates that much depends on the nature of the
action and the power that is invoked in the passage of the
act. In the *Dow Case* a statute provided a penalty for over-
charges in freight rates, requiring the payment of not less

than $50 nor more than $300 and costs of suit, including a reasonable attorney's fee. It was held that attorney's fees might be included as a part of the penalty for non-compliance with the duty imposed. The law was upheld as a valid exercise · of the police power of the state, and not obnoxious as partial or unequal legislation. *Perkins' Case* involved the constitutionality of a statute providing for attorney's fees in favor of plaintiffs in suits for injury to stock resulting from the failure of a railway to fence its track. The statute was held to be a proper exercise of the police power, and not in conflict with the Missouri constitution prohibiting special laws granting exclusive privileges. The *Duggan Case,* 109 Ill. 537, is to the same point, and holds the statute valid. The *Dey Case* also sustains a statute allowing attorney's fees in suits for damages on account of overcharges in freight rates. *Ellis' Case,* 87 Tex. Sup. 19 (26 S. W. Rep. 985), is the one appealed to the supreme court of the United States, and there reversed. *Wortman's Case* sustains a statute providing for an attorney's fee to plaintiff's attorney in actions to enforce mechanics' and certain other liens. *Vogel v. Pekoc* upholds an act providing for taxing attorney's fees as costs in action by servants for wages which they have previously demanded in writing, against the objection that it was class legislation. *Cameron v. Railroad Co.* sustains an act allowing the plaintiff reasonable attorney's fees in actions brought under a statute to recover possession of land taken without compensation by a railway company for its right of way. · And Judge Brewer, who wrote the opinion in the *Ellis Case,* finds nothing objectionable in a Kansas statute requiring a reasonable attorney's fee for plaintiff in actions against a railway company for damages from fire caused by the operation of its trains. This statute was held to be a valid exercise of the police power, and not in violation of the fourteenth amendment to the federal constitution. Judge Brewer wrote the opinion in the *Ellis Case* relied on by appellee, and some of the language of the opin-

ion is quite significant, and we shall have more to say of it hereafter. The *Williams Case*, 49 Ark. 492 (5 S. W. Rep. 883), involved the constitutionality of a statute providing for the assessment of attorney's fees in stock-killing cases on appeal from a board appointed to assess damages in the event the railway company did not recover a more favorable judgment than the award of the board. This act was held invalid largely because in conflict with a provision of the constitution of Arkansas that "every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character. He ought to obtain justice freely ' and without purchase, completely and without denial, promptly and without delay, conformably' to the laws." It is said in the opinion: "The legislature has no power to substitute boards of arbitration for courts without the consent of the parties. * * * To make the action of such board obligatory, or impose a penalty for resorting to the courts, would be a denial of the right, or a purchase of justice, and a violation of the constitution." In *Wilder's Case* an act of the Michigan legislature authorizing an attorney's fee to be taxed in actions for injuries to stock on account of failure of the company to fence was held unconstitutional as being an attempt to grant special advantages to one class at the expense and to the detriment of another. The attorney's fees were held to be a penalty for exercising in certain cases the common right of every person to make a defense in the courts where suits are brought against them. This case runs counter to the *Atchison Case,* and to some of the others to which we have referred. In the *Rosser Case* a statute for taxing attorney's fees in actions to recover wages not paid within a certain time after written demand was held invalid. The *Chair Co. Case* involved the validity of a statute authorizing the taxing of attorney's fees when judgments were recovered for personal services. This was held invalid, as being an attempt to give special advantages to one class at the expense of another. In *Jolliffe's Case* a statute provid-

ing that in all actions for injuries to stock by collision with moving trains plaintiff, in case he recovers, shall bo allowed a reasonable attorney's fee, was held unconstitutional as an attempt to grant special privileges to one class at the expense of another. The *Ellis Case* has already been referred to.

Enough of the cases have now been referred to to indicate the current of judicial decision, and to emphasize the statement already made that much depends upon the nature of the case and the character of the act that is made the basis of the cause of action. Almost without exception, whenever attorney's fees may reasonably be said to be a part of the penalty for violation of a police regulation, statutes allowing them to be taxed as against the party in default or guilty of the wrong have been sustained. But when imposed as a penalty for resorting to the courts to enforce a natural or common-law right they have been declared invalid. No argument is needed to demonstrate that the legislature may impose any penalty it sees fit for violation of valid police regulations. Thus, in *Missouri Pac. R. Co. v. Humes,* 115 U. S. 512 (6 Sup. Ct. Rep. 110, 29 L. Ed. 463), the Supreme Court of the United States sustained a statute subjecting railway companies to double damages for injuries due to failure to fence their rights of way. See, also, *Missouri Pac. R. Co. v. Mackey,* 127 U. S. 205 (8 Sup. Ct. Rep. 1161, 32 L. Ed. 107); *Minneapolis & St. L. R. Co. v. Emmons,* 149 U. S. 364 (13 Sup. Ct. Rep. 870, 37 L. Ed. 769); *St. Louis & S. F. R. Co. v. Mathews,* 165 U. S. 26 (17 Sup. Ct. Rep. 243, 41 L. Ed. 611). Whenever a statute authorizing the taxation of attorney's fees to plaintiff may be referred to the police power, such statute has, as a rule, been sustained. See cases heretofore cited. And whenever the remedy is not one of common or natural right, but is created by the legislature, that body may impose conditions on its exercise. For example, the remedy by attachment exists in this country by virtue of statutory enactment,

and is in derogation of the common law. For this reason the legislature may impose conditions on its exercise, and provide for the payment of attorney's fees in the event process is wrongfully issued. In *Drake v. Jordan,* 73 Iowa, 707, we held that attorney's fees should be taxed in a liquor injunction suit, although the action was commenced prior to the passage of the act which provided for the taxation thereof.

This thought need not be further elaborated, as enough has been said to indicate our views on this proposition. To determine the validity of the statute in question it is necessary, then, to consider the nature of the action and the character of power invoked in passing the act. Proceedings such as authorized by our statute for the condemnation of private property were unknown to the common law, and must be strictly construed. The provisions of the constitution relating to jury trials, and forbidding deprivation of property without due process of law, do not apply to these proceedings. *Whiteman v. Wilmington & S. R. Co.,* 2 Har. (Del.) 514; *Johnson v. Joliet & C. R. Co.,* 23 Ill. 202; *Baltimore & O. & C. R. Co. v. Ketring,* 122 Ind. 5 (23 N. E. Rep. 527) ; *City of Des Moines v. Layman,* 21 Iowa, 153; *Baltimore Belt R. Co. v. Baltzell,* 75 Md. 94 (23 Atl. Rep. 74) ; *American Print Works v. Lawrence,* 21 N. J. Law, 248; *Cario & F. R. Co. v. Trout,* 32 Ark. 17 ; *Pennsylvania R. Co. v. First German Lutheran Congregation,* 53 Pa. St. 445; *Gold v. Railroad Co.,* 19 Vt. 478; and authorities cited in Lewis, Eminent Domestic, section 311. The action is in the nature of a proceeding in *rem.* (*Wilson v. Hathaway,* 42 Iowa, 173; *Costello v. Burke,* 63 Iowa, 361) ; but for certain purposes it has been denominated a civil case, *Scott v. Lasell,* 71 Iowa, 180. Unless in conflict with the local constitution, statutes making the decision of the sheriff's jury or inferior tribunal conclusive are valid. *City of Des Moines v. Layman,* 21 Iowa, 156; *Appeal of Houghton,* 42 Cal. 35; *King v. City of New York,* 36 N.

Y. 182; *In re State Reservation at Niagara,* 102 N. Y. 734 (7 N. E. Rep. 916) ; *Railroad Co. v. Ely,* 95 N. C. 77. And in such cases the legislature may grant or withhold the righ' of appeal, or impose such conditions on its exercise as it may see fit. *Kundinger v. City of Saginaw,* 59 Mich. 355 (26 N. W. Rep. 634) ; *Schwede v. Town of Burnstown,* 35 Minn. 468 (29 N. W. Rep. 72) ; *Central Branch U. P. R. Co. v. Atchison, T. & S. F. R. Co.,* 28 Kan. 325; *Oliver v. Railroad Co.,* 83 Ga. 257 (9 S. E. Rep. 1086) ; *Meyers v. Simms,* 4 Iowa, 500.

Enough has been said to demonstrate that the remedy is a special one, and we turn now to the power under which it is provided. Eminent domain is the right or power of a sovereign state to appropriate private property to particular uses for the purpose of promoting the general welfare. Lewis, Eminent Domain section 1; *Noll v. Railroad Co.,* 32 Iowa, 66. In *Mississipi & R. River Boom Co. v. Patterson,* 98 U. S. 406 (25 L. Ed. 206), Justice Freed, in writing the opinion of the court, said: "The proceeding to take private property for public use is an exercise by the state of its sovereign power of eminent domain, and with its exercise the United States, a separate sovereignty, has no right to interfere by any of its departments. This position is undoubtedly a sound one, so far as the act of appropriating the property is concerned. The right of eminent domain appertains to every independent government. It requires no constitutional recognition. It is an attribute of sovereignty. The clause found in the constitution of the several states providing for just compensation for property taken is a mere limitation upon the exercise of the right. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the

execution of works in which the public is interested. But, notwithstanding the right is one which appertains to sovereignty, when the sovereign power attaches conditions to its exercise the inquiry whether the conditions have been observed is a matter for judicial cognizance." This is simply a reaffirmation of what Chief Justice Marshall said in *Barron v. City of Baltimore,* 32 U. S. 243 (8 L. Ed. 672) as follows: "That the right of eminent domain applies to every·independent government. It is an incident to sovereignty, and requires no constitutional recognition." The legislature cannot, strictly speaking, delegate this power, but may select such agencies to exercise it, and may confer on them such rights, as are not forbidden by the constitution. It follows then that the power, except when assumed by the sovereign itself, can be exercised only in virtue of a legislative enactment, and that the time, manner, and occasion of its exercise are wholly in the control of the legislature, except as it may be restrained by the fundamental law. *Bachler's Appeal,* 90 Pa. St. 207; *Swan v. Williams.* 2 Mich. 427; *Wilkin v. Railroad Co.,* 16 Minn. 271 (Gil. 244); *Secombs v. Railroad Co.,* 23 Wall. 108 (23 L. Ed. 67). The authority must be expressly given, and strictly pursued. *Creston Water Works Co. v. McGrath,* 89 Iowa, 502, Lewis, Eminent Domain, and cases cited. The jurisdiction is limited, and can only be exercised in the·manner pointed out by statute. *California Pac. R. Co. v. Central Pac. R. Co.,* 47 Cal. 549. As the power possessed by a railway company is a delegated one, the legislature may impose such conditions on its exercise as it sees fit, so long as these conditions are not in violation of some constitutional limitation. As the proceeding is in *invitum,* it is generally held that the condemning party should pay the costs not only up to judgment, but of an appeal lawfully taken in good faith by the landowner, even though such appeal be unsuccessful. *San Diego Land & Town Co. v. Neale,* 88 Cal. 50 (25 Pac. Rep. 977, 11 L. R. A. 604). And in some jurisdictions it is held

that the costs of the appeal should be awarded the land-
owner if the jury find in his favor for any amount, although
the same is less than that fixed by the commissioners. *New
Haven & Northampton Co. v. Inhabitants of Northampton,*
102 Mass. 116; *Owsley v. Navigation Co.,* 1 Wash. St. 491
(20 Pac. Rep. 782); *In re New York, W. S. & B. Ry. Co.,*
94 N. Y. 194. The matter of costs is regulated in this state
by the statute under consideration, and the only attack made
is on that part relating to attorney's fees. As defendant
contends that the appeal is something apart from the con-
demnation proceedings, we may with profit quote the follow-
ing from the decision in *Re New York, W. S. & B. Ry Co.,*
94 N. Y. 294: "But the appeal   *   *   * was a continu-
ation of the proceedings instituted by it [the railroad com-
pany] to ascertain the compensation payable to the land-
owners, and to acquire their land against their will. In
such a case to compel the landowners to pay any part of the
expenses incurred by the company for the purpose of as-
certaining the compensation, which proceedings were an in-
dispensable condition of its right to take the land, would
conflict with the constitutional right of the landowners to
just compensation.   *   *   * There is no warrant in the stat-
ute for allowing such costs, and, if there were, it would be a
violation of the constitutional right of the landowner." Just
compensation is what the statute aims at, and we see nothing
invalid in a provision requiring the payment of an attor-
ney's fee to plaintiff's attorney in the event he is successful.
The object of the law is to make the landowner whole, and to
reimburse him for any expenses he may be to in the pro-
ceedings resulting in the taking of his land for public use.
The railway company in taking is not exercising a common-
law or natural right, but a mere privilege conferred by the
legislature as a representative of the sovereign power. It
need not avail itself of the privilege unless it wishes, but,
if it does do so, it should be held bound by all valid condi-
tions imposed upon the exercise of the power. Surely, the

legislature may impose conditions on its grant of power,—whether precedent or subsequent is immaterial, as we view it,—for, as said in the New York case they "are imposed in a proceeding to ascertain the compensation to be paid the landowner." Counsel fees, under statutory authority, were allowed in the following cases: *Boston & A. R. Co. v. Inhabitants of Charlton,* 161 Mass, 32 (36 N. E. Rep. 688); *Gibbons v. Railway Co.,* 40 Mo. App. 146; *Taylor v. Railway Co.,* 83 Wis. 645 (53 N. W. Rep. 855). Some of the cases have gone so far as to hold that any law which casts the burden of the expense of the proceedings on the landowner is unconstitutional and void. See *In Re New York, W. S. & B. Ry. Co.,* 94 N. Y. 294; *Toledo A. A. & S. T. Co. v. Dunlap,* 47 Mich. 456 (11 N. W. Rep. 271); *Railroad Co. v. Gross,* 31 Hun, 83; *Schuylkil Navigation Co. v. Kittera,* 2 Rawle, 438; *Johnson v. Sutliff,* 17 Neb. 423 (23 N. W. Rep. 9). We do not go to this extent, for it is not necessary to the determination of the case. In *Frankel v. Railway Co.,* 70 Iowa, 427, we said however: "The costs are a part of the purchase price, as it were, of these lands, being added in the damages; both together constituting the price thereof, which the company was required to pay. The law assumes the costs as part of the debt of that company for the lands." If the costs are a part of the purchase price or damages, the attorney's fees are also: and, if a part of the purchase price, the statute imposing them is not invalid.

Returning to the *Ellis Case,* on which defendant relies, we find that the attorney's fees involved in that case were imposed as a penalty for failure to pay certain debts; and it was said in that case: "But a mere statute to compel the payment of indebtedness does not come within the scope of police regulations. The hazardous business of railroading carries with it no special necessity for the prompt payment of debts. That is a duty resting upon all debtors; and while in certain cases there may be a peculiar obligation,

which may be enforced by penalties, yet nothing of that kind springs from the mere work of railroad transportation." In the *Atchison Case, supra,* it is said: "When the legislature imposes on railroad corporations a double liability for stock killed by passing trains, it says, in effect, that, if suit be brought against a railroad company for stock killed by one of its trains, it must enter into court under conditions different from those resting on ordinary suitors.  *  *  * Yet this court has unanimously said that this differentiation of liability—this inequality of rights in the courts—is of no significance upon the question of constitutionality." This is the pivotal point in the case, and it is more strongly emphasized in *St. Louis I. M. & S. Co. v. Paul,* 173, U. S. 403 (19 Sup. Ct. Rep. 419, 43 L. Ed. 746), wherein it is said, quoting from the *Ellis Case*: "The statute arbitrarily singles out one class of debtors, and punishes it for failure to perform certain duties,—duties which are equally obligatory upon all debtors; a punishment not visited by reason of the failure to comply with proper police regulation, or for the protection of the laboring classes, or to prevent litigation about 'trifling matters, or in *consequence of any special corporate privilege bestowed by the state.*" It is important to note the italicized portion of this quotation. But it is said that the statute is unconstitutional because it does not impose the duty of paying attorney's fees on all corporations exercising the powers of eminent domain. We need not determine the question of fact on which this proposition rests, although we are inclined to doubt the statement in the broad form in which it is made. It is sufficient to say that the statute imposes the duty on all railway corporations which seek to avail themselves of the benefits of the act. The privilege is conferred on a class on conditions which apply to all of that class, and it is not obnoxious to either the state or federal constitution. As said in the *Atchison Case*: "Class legislation discriminating against some and favoring others is prohibited, but legislation which

is carrying out a public purpose is limited in its application, and if, within the sphere of its operation, it affects all persons similarly situated, it is not within the amendment." See, also, *Iowa R. Land Co. v. Soper*, 39 Iowa, 112; *Barbier v. Connoly*, 113 U. S. 27 (5 Sup. Ct. Rep. 357, 28 L. Ed. 923); *Deppe v. Railroad Co.*, 36 Iowa, 52; *St. Louis I. M. & S. R. Co. v. Paul*, 173 U. S. 404 (19 Sup. Ct. Rep. 419, 43 L. Ed. 746). Classification is certainly permissible in granting the power of eminent domain, and it goes without saying that the mere fact of inequality in no manner determines the matter of constitutionality. A law which is confined in its operation to a particular class is not void as unequal class legislation if the differentiation is based on some reason of public policy, and applies to and embraces all persons alike under similar circumstances. The legislature may, in its discretion, classify persons, corporations and associations, and impose on them as a class duties and liabilities, or confer upon them privileges not conferred on the whole people of the state. This is, of course, subject to the supreme condition that the classification shall not be arbitrary. This right of classification is not limited to matters connected with the police power, but may be exercised in all cases where public interests and the due administration of justice requires. *McAunich v. Railroad Co.*, 20 Iowa, 338; *Jones v. Railroad Co.*, 16 Iowa, 6; *Mackie v. Railroad Co.*, 54 Iowa, 540; *Minneapolis & St. L. R. Co. v. Beckwith*, 129 U. S. 26 (9 Sup. Ct. Rep. 207, 32 L. Ed. 585); *Missouri Pac. R. Co. v. Mackey*, 127 U. S. 205 (8 Sup. Ct. Rep. 1161, 32 L. Ed. 107); *St. Louis & S. F. R. Co. v. Mathews*, 165 U. S. 1 (17 Sup. Ct. Rep. 243, 41 L. Ed. 611); and *Farmers & M. Ins. Co. v. Dabney*, — Neb. — (86 N. W. Rep. 1070), and cases cited. Special privileges were conferred on defendant in this case not granted to other persons or associations, and, if the rule be as broad as contended for by appellee, these privileges are void, because defendant is granted certain prerogatives not

given to others.  The ready answer to all this is that all cor-
porations coming within the purview of the act are given
like privileges.  Given equal privileges, they may not com-
plain of the burdens imposed, provided they are imposed
on all entitled to use the privilege.  The act is not, in our
judgment, vulnerable to any of the limitations of either the
state or federal constitutions.  But, if it were, we
are not prepared to hold that defendant may take
advantage of its invalidity.  In *Dow v. Electric Co.*,
68 N. H. 59 (31 Atl. Rep. 22), the supreme court of New
Hampshire said:  "When a legislative grant of authority
to exercise the power of eminent domain contains a condition
that the grantee shall pay more than the value of the prop-
erty taken under the power, the grantee accepting the grant
and exercising the power cannot question the constitution-
ality of the condition.  The defendants were authorized
to flow plaintiff's land upon the condition, among others,
that they pay the damage thereby done to him, and 50 per
cent. in addition.  *  *  *  The statute is permissive.  It
confers a privilege which the defendants were at liberty to
exercise or not, as they saw fit.  By their exercise of the
power conferred, flowing the plaintiff's land, and applying
for assessment and damages, they are precluded from de-
nying the validity of the condition.  The question of its con-
stitutionality under either the federal or state constitution
is not open to them.  *Pitkin v. City of Springfield,* 112
Mass. 509; *Deverson v. Railroad Co.,* 58 N. H. 129, and
cases cited; *Dodge v. Stickney,* 61 N. H. 607; *People v.
Murray,* 5 Hill, 468.  The defendants' objection that the
statute is in conflict with both constitutions or either of them
is overruled."  This case was afterwards appealed to the
supreme court of the United States, and that tribunal said:
"We agree with the supreme court of New Hampshire in
thinking that the plaintiff in error, by availing itself of the
power conferred by the statute, and joining in a trial for
the assessment of damages, is precluded from denying the

validity of that provision which prescribes that 50 per cent. shall be added to the amount of the verdict. The act confers a privilege which the plaintiff in error was at liberty to exercise or not, as it saw fit." See 166 U. S. 489 (17 Sup. Ct. Rep. 645, 41 L. Ed. 1088). This appears to us to be sound doctrine, and, if followed, is sufficient to demand a reversal of the case. Much more might be said in support of the conclusions reached, but this opinion has already outgrown proper limits.

The order denying attorney's fees is reversed, and the cause is remanded for further proceedings in harmony with this opinion.—REVERSED.